1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10                       **WESTERN DIVISION**

11

12  CYNTHIA CURRY,                    )      No. CV 09-4415 CW
                                      )
13                  Plaintiff,        )      DECISION AND ORDER
               v.                     )
14                                    )
    MICHAEL J. ASTRUE,                )
15  Commissioner, Social             )
    Security Administration,         )
16                                    )
                    Defendant.        )
17  _____)

18

19       The parties have consented, under 28 U.S.C. § 636(c), to the

20  jurisdiction of the undersigned magistrate judge.  Plaintiff seeks

21  review of the denial of disability benefits.  The court finds that

22  judgment should be granted in favor of defendant, affirming the

23  Commissioner's decision.

24                       **I.   BACKGROUND**

25       Plaintiff Cynthia Curry was born on May 20, 1956, and was fifty-

26  two years old at the time of her administrative hearing.

27  [Administrative Record ("AR") 84.]  She has a high school education

28  with some college education, and past relevant work as a school bus

1 driver and in-home caretaker.  [AR 104, 394, 440.]  Plaintiff alleges

2 disability on the basis of emphysema, chronic obstructive pulmonary

3 disease ("COPD"), chronic tendinitis, and high blood pressure.  [AR

4 95.]

## II.   PROCEEDINGS IN THIS COURT

6       Plaintiff's complaint was lodged on June 19, 2009, and filed on

7 June 24, 2009.  On December 2, 2009, Defendant filed an Answer and

8 Plaintiff's Administrative Record.  On May 4, 2010, the parties filed

9 their Joint Stipulation ("JS") identifying matters not in dispute,

10 issues in dispute, the positions of the parties, and the relief sought

11 by each party.  This matter has been taken under submission without

12 oral argument.

## III.   PRIOR ADMINISTRATIVE PROCEEDINGS

14       Plaintiff applied for a period of disability and disability

15 insurance benefits ("DIB") on May 15, 2001, alleging disability since

16 April 26, 2001.  [AR 84.]  Plaintiff was insured for DIB purposes

17 until September 1, 2004; accordingly, she must establish disability on

18 or before this date.  After Plaintiff's application was denied

19 initially and on reconsideration, Plaintiff requested an

20 administrative hearing, which was held on April 12, 2002, before

21 Administrative Law Judge James Paisley ("ALJ Paisley") (the "2002

22 Hearing").  [AR 62-65, 390-423.]  Plaintiff appeared with counsel and

23 gave testimony.  [AR 390-423.]  ALJ Paisley denied benefits in a

24 decision issued on September 16, 2002 (the "2002 Decision").  [AR 327-

25 32.]  Plaintiff requested review of the decision by the Appeals

26 Council, which remanded the case to an administrative law judge on

27 March 18, 2004.  [AR 348-49.]  The Appeals Council ordered the

28 administrative law judge to further consider Plaintiff's residual

1  functional capacity and if warranted, obtain supplemental evidence

2  from a vocational expert.  [AR 349.]

3       On October 12, 2005, a second administrative hearing was held

4  before Administrative Law Judge Edward Schneeberger ("ALJ") (the "2005

5  Hearing").  [AR 424-69.]  Plaintiff appeared with counsel and

6  testified.  [Id.]  The ALJ denied benefits in a decision issued on

7  February 9, 2006 (the "2006 Decision").  [AR 21-26.]  When the Appeals

8  Council denied review on August 17, 2006, the ALJ's decision became

9  the Commissioner's final decision.  [AR 7-9.]  On October 18, 2006,

10  Plaintiff filed a complaint in the United States District Court,

11  Central District of California (Case No. CV 06-6543 CW), appealing the

12  2006 Decision denying benefits.  [AR 487.]  During the pendency of her

13  appeal, Plaintiff filed a duplicate application on February 7, 2007.

14  [AR 497.]  On September 11, 2007, this Court issued a Decision and

15  Order finding that specific and legitimate reasons were not provided

16  to discount treating medical evidence and remanding the matter for

17  further administrative proceedings (the "2007 Remand Order").  [AR

18  485-94.]  On September 27, 2007, the Appeals Council issued an order

19  remanding the matter to an administrative law judge for further

20  proceedings consistent with the 2007 Remand Order.  [AR 497-98.]  The

21  Appeals Council also directed the administrative law judge to

22  associate both of Plaintiff's claim files and issue a new decision on

23  the associated claims.  [Id.]

24       On September 23, 2008, a third administrative hearing was held

25  before the ALJ.  [AR 539-65.]  Plaintiff appeared with counsel and

26  testified.  [Id.]  On March 19, 2009, the ALJ denied benefits.  [AR

27  473-83.]  The Appeals Council denied review and the ALJ's decision

28  became the Commissioner's final decision.

1                    **IV.   STANDARD OF REVIEW**

2       Under 42 U.S.C. § 405(g), a district court may review the

3  Commissioner's decision to deny benefits.  The Commissioner's (or

4  ALJ's) findings and decision should be upheld if they are free of

5  legal error and supported by substantial evidence.  However, if the

6  court determines that a finding is based on legal error or is not

7  supported by substantial evidence in the record, the court may reject

8  the finding and set aside the decision to deny benefits.  See Aukland

9  v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v.

10 Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240

11 F.3d 1157, 1162 (9th Cir. 2001); Tackett v. Apfel, 180 F.3d 1094, 1097

12 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998);

13 Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada v.

14 Chater, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam).

15      "Substantial evidence is more than a scintilla, but less than a

16 preponderance."  Reddick, 157 F.3d at 720.  It is "relevant evidence

17 which a reasonable person might accept as adequate to support a

18 conclusion."  Id.  To determine whether substantial evidence supports

19 a finding, a court must review the administrative record as a whole,

20 "weighing both the evidence that supports and the evidence that

21 detracts from the Commissioner's conclusion."  Id.  "If the evidence

22 can reasonably support either affirming or reversing," the reviewing

23 court "may not substitute its judgment" for that of the Commissioner.

24 Id. at 720-21; see also Osenbrock, 240 F.3d at 1162.

25                         **V.   DISCUSSION**

26 **A.   THE FIVE-STEP EVALUATION**

27      To be eligible for disability benefits a claimant must

28 demonstrate a medically determinable impairment which prevents the

                                    4

1 claimant from engaging in substantial gainful activity and which is

2 expected to result in death or to last for a continuous period of at

3 least twelve months.  Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at

4 721; 42 U.S.C. § 423(d)(1)(A).

5        Disability claims are evaluated using a five-step test:

6            Step one: Is the claimant engaging in substantial
        gainful activity?  If so, the claimant is found not

7        disabled.  If not, proceed to step two.
             Step two: Does the claimant have a "severe" impairment?

8        If so, proceed to step three.  If not, then a finding of not
        disabled is appropriate.

9            Step three: Does the claimant's impairment or
        combination of impairments meet or equal an impairment

10       listed in 20 C.F.R., Part 404, Subpart P, Appendix 1?  If
        so, the claimant is automatically determined disabled.  If

11       not, proceed to step four.
             Step four: Is the claimant capable of performing his

12       past work?  If so, the claimant is not disabled.  If not,
        proceed to step five.

13           Step five: Does the claimant have the residual
        functional capacity to perform any other work?  If so, the

14       claimant is not disabled.  If not, the claimant is disabled.

15

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended

16

April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107

17

S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20

18

C.F.R. §§ 404.1520, 416.920.  If a claimant is found "disabled" or

19

"not disabled" at any step, there is no need to complete further

20

steps.  Tackett, 180 F.3d 1098; 20 C.F.R. §§ 404.1520, 416.920.

21

22        Claimants have the burden of proof at steps one through four,

23 subject to the presumption that Social Security hearings are non-

24 adversarial, and to the Commissioner's affirmative duty to assist

25 claimants in fully developing the record even if they are represented

26 by counsel.  Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at

27 1288.  If this burden is met, a prima facie case of disability is

28 made, and the burden shifts to the Commissioner (at step five) to

1 prove that, considering residual functional capacity ("RFC")[1], age,

2 education, and work experience, a claimant can perform other work

3 which is available in significant numbers.  Tackett, 180 F.3d at 1099-

4 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520, 416.920.

5      **B.   THE ALJ'S EVALUATION IN PLAINTIFF'S CASE**

6      Here, the ALJ found that Plaintiff had not engaged in substantial

7 gainful activity from April 26, 2001, the filing date of Plaintiff's

8 application, through September 1, 2004, the date last insured (step

9 one); that Plaintiff had the "severe" impairments of asthma and sleep

10 apnea (step two); and that Plaintiff did not have an impairment or

11 combination of impairments that met or equaled a "listing" (step

12 three).  [AR 475-76.]  The ALJ determined that Plaintiff had an RFC

13 enabling her to lift, carry, push or pull no more than ten pounds

14 frequently and twenty pounds occasionally, stand or walk for up to two

15 hours in an eight-hour workday, and sit for up to six hours in an

16 eight-hour workday.  [AR 476.]  Plaintiff was restricted from more

17 than occasional climbing, stooping, bending, crouching, and crawling

18 and needed to avoid even moderate exposure to fumes, odors, dust,

19 gases, and poor ventilation.  [Id.]  Plaintiff was unable to perform

20 her past relevant work (step four).  [AR 481.]  Based on testimony

21 from the vocational expert, it was determined that Plaintiff could

22 perform certain jobs existing in significant numbers in the national

23 economy, including telephone quote clerk, charge account clerk, and

24

25    [1] Residual functional capacity measures what a claimant can
still do despite existing "exertional" (strength-related) and
"nonexertional" limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155
26 n.5-6 (9th Cir. 1989).  Nonexertional limitations limit ability to
work without directly limiting strength, and include mental, sensory,
27 postural, manipulative, and environmental limitations.  Penny v.
Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1156
28 n.7; 20 C.F.R. § 404.1569a(c).

1  call out operator (step five).  [AR 481-82.]  Accordingly, Plaintiff

2  was found not "disabled" as defined by the Social Security Act.  [AR

3  482.]

4       **C.   ISSUES IN DISPUTE**

5       The parties' Joint Stipulation identifies the following disputed

6  issues:

7       1.   Whether the ALJ properly considered the opinion of treating

8            physician, Dr. Brian Korotzer; and

9       2.   Whether the ALJ properly considered Plaintiff's testimony.

10 [JS 3-4.]

11      **D.   ISSUE ONE: TREATING PHYSICIAN'S OPINION PERTAINING TO**

12      **RESIDUAL FUNCTIONAL CAPACITY**

13           **Background**

14      Dr. Brian Korotzer, a pulmonologist, was one of Plaintiff's

15 treating physicians during the period relevant for her disability

16 claim.  [See, e.g., AR 200, 302.]  Dr. Korotzer treated Plaintiff

17 since June 2001.  [AR 373.]

18      Dr. Korotzer did not submit an opinion for consideration by ALJ

19 Paisley prior to the 2002 Decision.  Despite not submitting a formal

20 opinion, the opinion of Dr. Cohenzadeh, a State Agency review

21 physician, strongly suggests that it incorporated Dr. Korotzer's

22 opinion.  On September 7, 2001, Dr. Cohenzadeh completed a Physical

23 Residual Functional Capacity Assessment.  [AR 288-95.]  Dr. Cohenzadeh

24 opined that Plaintiff could occasionally lift and/or carry twenty

25 pounds, frequently lift and/or carry ten pounds, stand or walk for at

26 least two hours in an eight-hour workday, and sit for six hours in an

27 eight-hour workday.  [AR 289.]  As support for his conclusions, Dr.

28 Cohenzadeh indicated that he reached this RFC "after discussion with"

7

1    Dr. Korotzer and that he gave the opinion of Dr. Korotzer greater

2    weight than that of the consultative examiner.  [AR 289, 294.]

3        On September 20, 2005, Dr. Korotzer completed a Pulmonary

4    Residual Functional Capacity Questionnaire ("2005 Opinion"), which

5    Plaintiff submitted to the ALJ upon remand of the 2002 Decision.  [AR

6    373-77.]  Dr. Korotzer opined that Plaintiff could sit for at least

7    six hours in an eight-hour workday, stand or walk for less than two

8    hours in an eight-hour work day, and rarely lift more than ten pounds.

9    [AR 375.]  Dr. Korotzer wrote that Plaintiff had three to four asthma

10   attacks a year, each of which would incapacitate her for several weeks

11   on average.  [AR 374.]  Dr. Korotzer indicated that he did not know

12   whether Plaintiff would need unscheduled breaks or how many days

13   Plaintiff would likely be absent from work each month due to her

14   impairments.  [AR 375-76.]  In the 2006 Decision, the ALJ adopted Dr.

15   Cohenzadeh's opinion and rejected Dr. Korotzer's 2005 Opinion.  [AR

16   24.]

17       After remand of the 2006 Decision, Plaintiff submitted another

18   opinion by Dr. Korotzer, dated October 15, 2002[2] (the "2002 Opinion").

19   [525-28.]  Dr. Korotzer opined that Plaintiff could sit for at least

20   six hours in an eight-hour work day, stand or walk for less than two

21   hours out of an eight-hour workday, occasionally lift no more than ten

22   pounds, and would require several unscheduled breaks.  [AR 527.]  Dr.

23

24       [2]  There is dispute as to the date of this opinion.  Although the
     date next to the signature appears to be October 15, **2002**, Plaintiff
25   argues that it was actually written on October 15, **2007**, based on
     comparisons with other samples of Dr. Korotzer's writing and his
26   "admittedly sloppy" penmanship. [JS 7, n.1.]  However, Plaintiff's
     counsel stated during the latest administrative hearing that the
27   opinion was completed in 2002. [AR 543 (citing Exhibit B19F (AR 525-
     28)).]  In the administrative decision, the ALJ evaluated the opinion
28   as if it was completed in 2002. [AR 480.]

1   Korotzer estimated that Plaintiff would likely be absent more than

2   three times a month due to her impairments.[3]   [AR 528.]

3                    **The Commissioner's Findings**

4        In his decision, the ALJ noted the opinions of both Dr.

5   Cohenzadeh and Dr. Korotzer.  The ALJ accepted Dr. Cohenzadeh's RFC

6   and rejected Dr. Korotzer's more restrictive limitations.  [AR 479-

7   80.]  In the first claim, Plaintiff asserts that the ALJ did not

8   properly consider the opinion of Plaintiff's treating physician, Dr.

9   Korotzer. [JS 4-12.]  Specifically, Plaintiff argues that the ALJ

10  "simply regurgitated" his previous decision and failed to articulate

11  specific and legitimate reasons for discounting the opinion of Dr.

12  Korotzer.  [JS 4.]

13                         **Discussion**

14       Under the Commissioner's regulations, state agency medical

15  physicians and other program physicians are considered highly

16  qualified experts in the area of Social Security disability

17  evaluations, and their evaluations must be considered by the

18  Commissioner as opinion evidence except for the ultimate determination

19  of disability.  20 C.F.R. §§ 404.1527(f)(2)(I), 416.927(f)(2)(I).

20  However, the opinion of a non-examining physician is normally entitled

21  to less deference than that of an examining and treating physician

22

23       [3]  Plaintiff has attached a third opinion from Dr. Korotzer,
     dated July 16, 2008, and asserts that the ALJ failed to consider it.
24   [JS 7, n.2; see "Exhibit 1".]  Upon review of the evidence, however,
     it appears that the 2008 evaluation is almost identical to the 2002
25   and 2005 evaluations, and posits no greater limitations. [Compare JS
     Exhibit 1 and AR 374-75 and AR 525-28.]  Accordingly, the ALJ's
26   failure, if any, to consider this opinion was harmless error.  See
     Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1055 (9th
27   Cir. 2006)("We have . . . affirmed under the rubric of harmless error
     where the mistake was nonprejudicial to the claimant or irrelevant to
28   the ALJ's ultimate disability conclusion").

1  precisely because of a lack of opportunity to conduct an independent

2  examination and lack of a treatment relationship with the claimant.

3  Benecke v. Barnhart, 379 F.3d 587, 592 (9th Cir. 2004); Andrews v.

4  Shalala, 53 F.3d 1035, 1040-1041 (9th Cir. 1995) (explaining greater

5  weight given to opinions of treating and examining physicians because

6  they have a greater opportunity to know and observe the patient as an

7  individual).  Standing alone, the opinion of a non-examining physician

8  cannot constitute substantial evidence that justifies the rejection of

9  the opinion of either an examining physician or a treating physician.

10 Widmark v. Barnhart, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); Morgan

11 v. Comm'r, 169 F.3d 595, 602 (9th Cir. 1999); see also Erickson v.

12 Shalala, 9 F.3d 813, 818 n. 7 (9th Cir. 1993) ("'[T]he non-examining

13 physicians' conclusion, with nothing more, does not constitute

14 substantial evidence, particularly in view of the conflicting

15 observations, opinions, and conclusions of an examining

16 physician.'")(quoting Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.

17 1990)).

18      Here, the Commissioner's decision to reject both Dr. Korotzer's

19 2005 Opinion and 2002 Opinion, specifically the lifting and carrying

20 restriction, was supported by substantial evidence.

21           The 2005 Opinion

22      The ALJ provided several specific and legitimate reasons for

23 rejecting the 2005 Opinion and relying on Dr. Cohenzadeh's opinion

24 instead.  The ALJ acknowledged that Dr. Korotzer opined greater

25 functional restrictions in his 2005 Opinion than in his discussion

26

27

28

1   with Dr. Cohenzadeh in 2001[4], but determined that the medical record

2   did not indicate a worsening of Plaintiff's impairment from 2001-2005

3   that would support the increased lifting restrictions opined by Dr.

4   Korotzer in 2005.[5]   [AR 479.]

5        First, the ALJ noted that Plaintiff's medical history was

6   inconsistent with Dr. Korotzer's opinion.  See Bayliss v. Barnhart,

7   427 F.3d 1211, 1216 (9th Cir. 2005) (finding that inconsistency

8   between an opinion and treatment notes is a specific and legitimate

9   reason for rejection of the opinion).  Dr. Korotzer claimed that

10  Plaintiff had three to four asthma attacks a year that would

11  incapacitate her for several weeks at a time.  [AR 374, 479.]  The ALJ

12  observed, however, that this claim was inconsistent with the medical

13  evidence.  The ALJ reasonably noted that were Plaintiff to have had

14  such debilitating attacks, the medical records should indicate

15  increased care and medical attention.  [AR 479.]  To the contrary,

16  during the relevant period of claimed disability, Plaintiff's medical

17  records indicate that she had two documented overnight hospital stays,

18  two emergency room visits,[6] and otherwise routine care for her asthma.

19  [AR 202, 220, 369, 384, 479.]  The second emergency room visit in 2004

20

21       [4]   There is no dispute that Dr. Cohenzadeh spoke with Dr.
    Korotzer and relied on his opinion to formulate his RFC.
22

         [5]   Although not mentioned by the ALJ, the Court notes that
23  Plaintiff testified at the 2002 Hearing that she can and does lift
    fifteen pounds.  [AR 397.]  This statement is inconsistent with Dr.
24  Korotzer's 2005 Opinion.

25       [6]   Plaintiff inaccurately asserts that "she required emergency
    care July 16, 2004 due to increase[d] shortness of breath."  (JS at
26  10.)  The record indicates, however, that she was directed to the
    emergency room after a "routine visit to check asthma" with Dr.
27  Korotzer showed that she had an elevated blood pressure.  [AR 384-85.]
    In fact, the record indicates that she had no shortness of breath. [AR
28  at 384.]

1 was unrelated to Plaintiff's asthma.  [AR 384, 479.]  Thus, the ALJ

2 reasonably concluded that this level of care was inconsistent with the

3 frequency and duration of asthma attacks proffered by Dr. Korotzer.

4      Second, the ALJ noted that Plaintiff received primarily routine

5 care for her asthma.  [AR 479.]  Plaintiff visited Dr. Korotzer

6 approximately ten times over a four-year period, with decreasing

7 frequency in 2003 and 2004.  [AR 200, 302, 308-09, 312, 378, 382, 384-

8 85.]  During two routine visits in 2003, Dr. Korotzer noted that

9 Plaintiff's asthma was "fairly well-controlled" and "stable."  [AR

10 382-83.]  See Bayliss, 427 F.3d at 1216; see also Lusardi v. Astrue,

11 350 Fed. Appx. 169, 172 (9th Cir. 2009) ("Rejecting an opinion on the

12 basis that it is not supported by the doctor's own treatment notes or

13 by clinical findings is permissible.").  Indeed, in 2003, Plaintiff

14 only sought non-routine treatment for her asthma on two occasions.

15 [AR 379, 381.]  Further, in 2004, Plaintiff only made one routine

16 visit to Dr. Korotzer regarding her asthma.  [AR 385.]  The ALJ

17 reasonably determined that there are no other documented medical

18 visits, whether urgent or routine, concerning Plaintiff's asthma that

19 would suggest a need to increase restrictions from those Dr. Korotzer

20 relayed to Dr. Cohenzadeh in 2001.  See Reddick, 157 F.3d at 720-21

21 (requiring the Court to defer to the Commissioner when evidence can

22 reasonably support either affirming or reversing).

23      Finally, the ALJ also relied on Dr. Cohenzadeh's opinion in

24 formulating his RFC.  The ALJ determined that Dr. Cohenzadeh's RFC was

25 based on a review of Plaintiff's medical records and a discussion with

26 Dr. Korotzer.  [AR 479.]  By all indications, Dr. Cohenzadeh adopted

27 Dr. Korotzer's functional limitations, which were supported by the

28 medical evidence.  Contrary to Plaintiff's assertion, however, the ALJ

1  did not characterize Dr. Cohenzadeh's opinion as Dr. Korotzer's

2  opinion.  Rather, the ALJ specifically noted that Dr. Cohenzadeh

3  adopted only the functional limitations opined by Dr. Korotzer and

4  offered his own additional restrictions, including restricting

5  Plaintiff from even moderate exposure to pulmonary irritants.  [AR

6  479.]

7          2002 Opinion

8      The ALJ's reasons for rejecting the 2005 Opinion are equally

9  applicable to the 2002 Opinion, as these opinions are nearly

10 identical.[7]  The medical evidence for the relevant period of claimed

11 disability remains the same.  Moreover, the ALJ reasonably determined

12 that Dr. Korotzer's opinion failed to account for the ALJ's finding

13 that Plaintiff was limited to a reduced range of sedentary work and

14 precluded from any of her past work, based on her significant

15 breathing condition.  In the absence of any indication that Dr.

16 Korotzer's opinion accounted for Plaintiff's RFC and less restrictive

17 work demands, the ALJ reasonably discounted it.

18     Accordingly, this claim does not merit reversal of the

19 Commissioner's decision finding that Plaintiff is not disabled.

20

21

22     [7]  Contrary to Plaintiff's assertion, the ALJ's focus on the fact
   that the 2002 Opinion was written in 2002 and submitted in 2007 was
   not an attempt by the "ALJ [] to manufacture a 'gotcha' moment."  [JS
23 7, n.1.]  A reasonable person looking at the opinion could have
   assumed it was dated October 15, **2002**.  Moreover, Plaintiff's counsel
24 presented the opinion as having been written in 2002. [AR 543.]
       Plaintiff has offered a plausible explanation for the purported
25 misunderstanding, but the explanation is not conclusive.  Even
   assuming that the 2002 Opinion was written in 2007, Plaintiff's date
26 last insured is September 1, 2004.  Dr. Korotzer fails to indicate the
   applicable time period for his opinion.  Moreover, had the 2002
27 Opinion been Dr. Korotzer's Opinion as of 2007, then it is
   inconsistent with his own treatment notes, which the ALJ found were
28 indicative of only mild pulmonary function tests.  [AR 480, 535.]

1       **E.   ISSUE TWO: CREDIBILITY**

2       During the hearings, Plaintiff testified that she stopped working

3   because of her asthma.  [AR 431.]  Plaintiff said that she experienced

4   extensive shortness of breath and consequently was exhausted.  [AR

5   432, 438.]  As a result of her asthma, Plaintiff has to be treated

6   with nebulizers twice a day and bronchial dialtors, and since 2001,

7   she continues to have good and days.  [AR 444.]  The bad days can last

8   for weeks.  [AR 556.]

9       The ALJ found Plaintiff's testimony concerning the "intensity,

10  persistence and limiting effects of" her symptoms to be "not credible

11  to the extent they are inconsistent with" his RFC assessment because

12  the medical record did not support Plaintiff's claims that she was

13  unable to sustain the activities delineated in her RFC. [AR 477.]

14  First, the ALJ noted that Plaintiff had not required any respiratory

15  related emergency care since December 2002 and that three different

16  pulmonary function tests showed that she responded well to an inhaled

17  bronchodilator and had no acute respiratory illness.  [AR 169, 318,

18  322-23, 477.]  Second, the ALJ found that despite Plaintiff's claims

19  of shortness of breath at rest and upon minimal exertion, a cardio-

20  pulmonary exercise and a cardiologist's recommendations indicated

21  otherwise.  [AR 477.]  During a cardio-pulmonary exercise test in

22  October 2001, Plaintiff terminated the test after four minutes due to

23  pain in her legs.  [AR 310.]  The doctor noted that Plaintiff only had

24  "slight" shortness of breath and no apparent difficulties.  [Id.]

25  Moreover, in January 2003, Plaintiff's cardiologist, with knowledge of

26  Plaintiff's asthma, recommended that she increase her exercise in

27  order to improve her blood pressure.  [AR 380.]  Plaintiff asserts

28

1 | that the ALJ's "paucity of reasons" fails to meet the standard of

2 | clear and convincing.  [JS 19-20.]

3 |      Questions of credibility and resolution of conflicts in the

4 | testimony are functions solely for the ALJ.  <u>Parra v. Astrue</u>, 481 F.3d

5 | 742, 750 (9th Cir. 2007) (<u>citing</u> <u>Sample v. Schweiker</u>, 694 F.2d 639,

6 | 642 (9th Cir. 1982)).  To determine whether a claimant's subjective

7 | symptom testimony is credible, the ALJ must engage in a two-step

8 | analysis.  <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035-36 (9th Cir.

9 | 2007).  First, the ALJ must determine whether the claimant has

10 | presented objective medical evidence of an underlying impairment

11 | "'which could reasonably be expected to produce the pain or other

12 | symptoms alleged.'"  <u>Id.</u> (<u>quoting</u> <u>Bunnell v. Sullivan</u>, 947 F.2d 341,

13 | 344 (9th Cir. 1991)).  Second, if the claimant meets this first test,

14 | and there is no evidence of malingering, "the ALJ can reject the

15 | claimant's testimony about the severity of her symptoms only by

16 | offering specific, clear and convincing reasons for doing so."  Id. at

17 | 1036 (<u>quoting</u> <u>Smolen</u>, 80 F.3d at 1281); <u>see</u> <u>also</u> <u>Parra</u>, 481 F.3d at

18 | 750; <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1208 (9th Cir. 2001).  An

19 | ALJ must "specifically identify" the testimony found not credible, the

20 | ALJ must explain what evidence undermines the testimony, and the

21 | evidence on which the ALJ relies must be "substantial."  <u>Parra</u>, 481

22 | F.3d at 750; <u>Tonapetyan</u>, 242 F.3d at 1148 ("The ALJ must give

23 | specific, convincing reasons for rejecting the claimant's subjective

24 | statements."); <u>Light v. Soc. Sec. Admin.</u>, 119 F.3d 789, 792 (9th Cir.

25 | 1997).

26 |      Plaintiff argues that the "ALJ does not offer a single legally

27 | sufficient reason to reject" her testimony but neither directly

28 | addresses any of the specific reasons provided by the ALJ to discount

1  her testimony nor provides any argument for the assertion that the

2  ALJ's credibility evaluation was not legally sufficient.  [JS 18.]

3      Contrary to Plaintiff's argument, a review of the record

4  indicates that the ALJ provided clear and convincing reasons under the

5  Ninth Circuit standard.  An ALJ "may rely on ordinary techniques of

6  credibility evaluation," including a plaintiff's reputation for

7  truthfulness and inconsistencies between a plaintiff's testimony and

8  conduct.  See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir.

9  2008); Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).

10 First, the ALJ noted that the objective medical evidence did not

11 support the level of disability alleged by Plaintiff.  Although the

12 lack of objective medicine cannot be the sole basis for rejecting a

13 plaintiff's credibility, "it is a factor that the ALJ can consider in

14 his credibility analysis."  Burch v. Barnhart, 400 F.3d 676, 681 (9th

15 Cir. 2005).  Here, the ALJ provided concrete examples of

16 inconsistencies between Plaintiff's claims and her doctors' findings.

17 Several doctors disagreed that Plaintiff was completely incapacitated

18 and indeed, one recommended exercise.  [AR 380.]  Her treatment was

19 also conservative in nature.  Parra, 481 F.3d at 751 (noting that

20 conservative treatment is a clear and convincing reason for finding a

21 plaintiff not credible).  The ALJ also noted that Plaintiff gave

22 "unsatisfactory" effort during one of her tests.  [AR 169, 477.]  See

23 Thomas, 278 F.3d at 959 (finding that plaintiff's failure to give

24 maximum effort at a physical evaluation supported the ALJ's finding

25 that plaintiff was not credible).  Accordingly, this issue does not

26 warrant reversal of the Commissioner's decision.

27 //

28 //

1                                 **V.   ORDERS**

2       Accordingly, **IT IS ORDERED** that:

3       1.    The decision of the Commissioner is **AFFIRMED**.

4       2.    This action is **DISMISSED WITH PREJUDICE**.

5       3.    The Clerk of the Court shall serve this Decision and Order

6 and the Judgment herein on all parties or counsel.

7

8 DATED: October 26, 2010

9



10                      CARLA M. WOEHRLE
                United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28